UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE LARDNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:03cv00180 (JDB) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION AND MEMORANDUM
IN SUPPORT OF MOTION FOR AN ADEQUATE *VAUGHN* INDEX AND
MOTION TO POSTPONE PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Contents

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    THE DEPARTMENT'S *VAUGHN* INDEX IMPROPERLY OMITS ANY
        DESCRIPTION OF THE DATE OF RECORDS WITHHELD. . . . . . . . . . . . . 8

    II.   THE DEPARTMENT'S *VAUGHN* INDEX FAILS TO ADDRESS THE
        AGENCY'S BURDEN OF DEMONSTRATING THAT IT HAS TAKEN
        STEPS TO DETERMINE WHETHER INDIVIDUALS ARE ALIVE
        BEFORE WITHHOLDING INFORMATION BASED ON THE
        PRIVACY INTERESTS OF THESE INDIVIDUALS. . . . . . . . . . . . . . . . . . . 12

    III.  THE BRIEFING SCHEDULE SHOULD BE POSTPONED
        UNTIL THE DEFICIENCIES IN THE DEPARTMENT'S
        *VAUGHN* INDEX ARE CURED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**INTRODUCTION**

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff seeks records of the Office of the Pardon Attorney concerning pardon and clemency applications that are fourteen to thirty years old.   Under a stipulated schedule entered by the Court, the Department of Justice was required to provide Plaintiff with a <u>Vaughn</u> index for these materials by June 20, 2003, so that Plaintiff could prepare his cross-motion for summary judgment and opposition to the Department's motion by July 18, 2003.

Plaintiff now moves to compel the Department to produce a new <u>Vaughn</u> index and to postpone the date for its motion and opposition until a proper <u>Vaughn</u> index has been provided. The declarations produced by the Department as its <u>Vaughn</u> index provide only minimal, categorical descriptions of records being withheld in their entirety.  In particular, the Department has omitted from the index the dates of the records, and it has provided little or no information about what steps (if any) the Department took to determine whether the individuals whose privacy interests it asserts are alive.  Plaintiff requests that the Court direct the Department to provide a properly detailed <u>Vaughn</u> index and postpone the date for Plaintiff's Opposition and Cross-Motion until two weeks after the new index is provided.

Plaintiff's counsel has conferred with Defendant's counsel concerning the <u>Vaughn</u> index, and the parties have narrowed the dispute.  However, Defendant opposes the relief requested in this Motion.

**BACKGROUND**

Plaintiff George Lardner is a reporter for the *Washington Post* and an author who is writing a book on Presidential use of the pardon power.  In preparing this book, Plaintiff is

examining historical records concerning pardons and clemency actions.  Some of these records

are held by the Office of the Pardon Attorney, a component of the Department of Justice, and

Plaintiff has requested that the Department release records concerning pardons and clemency

applications that are at least fourteen years old.

More specifically, the records that Plaintiff has requested fall under two categories.  First,

Plaintiff has requested any "letters of advice" concerning pardons from 1960-1989 that are still in

the custody of the Office of the Pardon Attorney because they have not been transferred to the

National Archives with other historical records.  See Complaint ¶¶ 10-13.  "Letter of advice" is

the Pardon Attorney's name for a report on a pardon or clemency request prepared by the

Department of Justice.  This report includes a recommendation of the Attorney General (or his

designee) to the President.  See Love, *Of Pardons, Politics and Collar Buttons: Reflections on*

*the President's Duty To Be Merciful*, 27 *FORDHAM URBAN L. REV.* 1483, 1490 & n. 27 (2000).

The Department initially claimed that all letters of advice from 1960-1989 were entirely exempt

from disclosure under the FOIA.  Complaint ¶ 14.  Second, Plaintiff requested the complete files

on the applications of twenty-five specific, notable individuals (e.g., Marcus Garvey, John

Ehrlichman, James Hoffa) who either received a pardon or commutation from a former President

or submitted an unsuccessful petition for pardon or commutation to a former President prior to

January 20, 1989.  Complaint ¶¶ 17-39.  The Department withheld some of these records in their

entirety and released others with redactions.  Id. ¶¶ 31-37, 39.

After the complaint in this action was filed, the Department narrowed the records at issue

by abandoning its claim that records prior to December 31, 1972 are privileged, and transferring

the records dated prior to this date to the National Archives to be processed and made available

to Plaintiff in accordance with the FOIA.  <u>See</u> Declaration of Samuel T. Morrison (Defendant's

Exhibit 1) ¶ 18.  In addition, the Department acknowledged that some of the letters of advice that

it had withheld as privileged presidential communications had already been made public by the

Presidential Libraries holding records from the Ford and Carter Administrations, and the

Department released its copies of these documents.  <u>Id.</u> ¶ 19.  The records that remain at issue are

dated after December 31, 1972, and concern applications for pardon and clemency considered in

the Nixon, Ford, Carter and Reagan Administrations.

In a schedule jointly proposed by the parties, the Department agreed to provide a <u>Vaughn</u>

index[1] to justify its withholdings on June 20, 2003, when it filed its Motion for Summary

Judgment.  The "index" portion of the Department's submission is contained in two tables: (1)

Tab A of Exhibit 1, the Declaration of Samuel T. Morrison, which describes records processed

by the Office of Pardon Attorney, and (2) a table of codes at page 6 of the Declaration of Carol L.

Keeley (Defendant's Exhibit 5), which describes the meaning of eleven codes placed on Pardon

Attorney records that were referred to the Federal Bureau of Investigation (FBI) for processing.

These indices provide very little description of the documents that are being withheld,

even though most of the documents at issue have been withheld in their entirety.  The Office of

the Pardon Attorney states that it has withheld approximately 13,500 pages, but approximately

11,000 of these pages are covered by a single row in the table that describes them as follows:

| 1 | Signed and unsigned letters of advice from the Attorney General, the Deputy Attorney General, and the Associate Attorney General to the President in particular clemency cases (1973-1989) | Presidential Communications Deliberative in full Privacy in part | Approx. 11,000 |

---

[1]  <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1974).

Morrison Decl., Tab A.   The table does not disclose how many letters of advice are being

withheld, the month or year in which the letters were written, or even the identity of the former

President for whom these particular reports were created.

The remainder of the table describing the Office of Pardon Attorney's processing of

records identifies individual records or categories of records, but it also fails to provide any

information about when the records were authored within the sixteen year period from 1973-

1989.  See id. Items 2-159.  Several of the table entries also cover large categories of records

without providing the dates or a specific description of the records (although no other entry seeks

to cover 11,000 records with a one-sentence description).  For example, item 106 covers 461

pages described only as "Third-party correspondence between OPA and private citizens

concerning [Otto] Kerner's clemency petition, containing their names, home addresses and other

identifying information," id. at 15, and item 91 covers 145 pages of correspondence concerning

James Hoffa's petitions with an equivalent description.  Id. at 13.

With respect to the records described by the Keeley Declaration, the Department relies

almost entirely upon FOIA's exemptions protecting personal privacy.  Many of the individuals

associated with these records are deceased.[2]  When an agency offers personal privacy to justify

withholding records, the Court of Appeals has stated that the agency's burden of proof includes

proving that it has taken adequate steps to determine whether the individuals are still alive and

_____

[2] The Department acknowledges that twenty-four of the twenty-five individuals
specifically named in the FOIA requests are deceased.  See Complaint ¶ 28; Morrison Decl. ¶ 33.

has taken death into account in making its determination.  See, e.g., Schrecker v. Department of Justice, 254 F.3d 162, 167 (D.C. Cir. 2001).

The Department's papers contain remarkably little information on what steps were taken in this case.  The declaration concerning processing by the FBI states that the FBI searched unspecified "newspaper obituaries and death records" to locate information concerning David Lee Parr.  Keeley Decl. ¶ 7.  With respect to all other privacy claims in the records referred to the FBI, the Department's papers do not contain any information about what steps, if any, the FBI took to determine whether individuals identified in the records are still alive before redacting information based on personal privacy.

The decisions made by the FBI in redacting these records appear to be inconsistent.  For example, in records from the Pardon Attorney's files concerning pardon applications by Lester Binion and John Ehrlichman, the FBI withheld the names and ages of family members based on personal privacy, including the name of Mr. Ehrlichman's second wife.  See Plaintiff's Exhibit 8 at Page 65 and Exhibit 9 at Page 202.  However, the Department released the name of Mr. Ehrlichman's first wife.  Plaintiff's Exhibit 10, Pages 186-87.  In comparable records from the Pardon Attorney's file concerning former Congressman Harrison Williams, the Department released the names of all family members.  Plaintiff's Exhibit 11, Page 619; see also Plaintiff's Exhibit 12, Page 20 (disclosing family members of David Beck).  If this apparently inconsistent treatment is not arbitrary but, instead, is based on the Department's conclusion that certain individuals are deceased or do not have comparable privacy interests for some other reason, the Department's declarations do not reveal the Department's basis for these distinctions.

With respect to the records processed by the Office of the Pardon Attorney, the Department's declaration states that in processing one category of records, correspondence from private citizens in the files, the Department presumed that the writer was deceased if it could be determined "from the information contained in the letter that the writer would now be 75 years old or older," and the Department released the names of the writers who were presumed dead under this test. Morrison Decl. ¶ 37. With respect to all the other categories of records described in the Index, the declaration does not describe what, if any, procedure the Department used in connection with the privacy claims. Instead, the declaration indicates that the Department decided to withhold the identity of all individuals whose applications are the subject of the 11,000 pages of letters of advice and the co-defendants of these clemency applicants without making any inquiry into whether these individuals are deceased. Id. ¶¶ 32, 35. The declaration also states that the Office of the Pardon Attorney withheld the identities of family members "unless they are known to be deceased," id. ¶ 34, but does not describe how the Department determined that individuals were "known" to be deceased.

## ARGUMENT

It is well-established that a plaintiff in a FOIA case is entitled to an index of the records and portions of records that have been withheld by the defendant agency. Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). In this case, as in most FOIA cases, the government has exclusive access to details about the documents being withheld. A detailed Vaughn index is needed to "afford the party seeking disclosure a meaningful opportunity to contest, and the district court an adequate foundation to review the soundness of the withholding." King v. Department of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987); accord Vaughn, 484 F.2d at 826. A Vaughn index

normally includes an itemized list of each document withheld or portions of documents withheld.

 See King, 830 F.2d at 224; Dellums v. Powell, 642 F.2d 1351, 1361 (D.C. Cir. 1980).  As a

substitute for itemized indices, courts have accepted categorical descriptions of the materials

withheld, *provided* that the categories are not drawn too broadly and do not obscure details that

are relevant to the validity of the agency's claims.  King, 830 F.2d at 224-25.

A proper Vaughn index will disclose "as much information as possible without thwarting

the [claimed] exemption's purpose." King, 830 F.2d at 224; accord Lykins v. United States

Department of Justice, 725 F.2d 1455, 1463 (D.C. Cir. 1984).   It is not sufficient for the agency

to disclose only the facts that support its theory for withholding the records.  "Specificity is the

defining requirement of the Vaughn index," because without a detailed, non-conclusory

description of the records, the adversarial process is unnecessarily compromised, and the court

cannot evaluate the agency's claims. King, 830 F.2d at 218-219; see also Founding Church of

Scientology v. Bell, 603 F.2d 945, 948-49 (D.C. Cir. 1979).  Moreover, if the agency is permitted

to withhold details that might undermine its claims, the requester will be "unable to argue for the

release of redacted or withheld documents with 'desirable legal precision' because 'the party

seeking disclosure cannot know the precise contents of the documents sought.'" Campaign for

Responsible Transplantation v. FDA, 180 F. Supp. 2d 29, 32 (D. D.C. 2001) (quoting Vaughn,

484 F.2d at 823).

The Vaughn index that the Department has tendered here does not even remotely meet

these standards of detail.  More specifically, the Vaughn index frustrates the review of  relevant

facts because it (1) fails to disclose the age and dates of the records; and (2) fails to provide

information relevant to the agency's privacy claims, including a description of what steps, if any,

the agency took to determine whether individuals are still alive.  By presenting a <u>Vaughn</u> index

with categorical descriptions that treat the passage of time as irrelevant to the agency's

exemption claims, the Department has denied the Court and Plaintiff key factual details.

Moreover, the absence of information on these issues is not the result of "cautious avoidance of

revealing descriptive detail" that would reveal protected information; it reflects a decision to

employ "wide-ranging" categories that limit the ability to review and challenge the agency's

determination. <u>King</u>, 830 F.2d at 223.

## I.   THE DEPARTMENT'S *VAUGHN* INDEX IMPROPERLY OMITS ANY DESCRIPTION OF THE DATE OF RECORDS WITHHELD.

The Department's <u>Vaughn</u> index here is deficient not merely because it employs

categorical descriptions, but because it omits *all* information about the age of the records, other

than disclosing that they fall within a sixteen year period between 1973 and 1989.  By omitting

the dates, the Department creates the impression that the claims that it asserts are unaffected by

the age of the records and frustrates efforts by Plaintiff to argue to the contrary.  Three

considerations show that the age and dates of these records are material facts, and a <u>Vaughn</u>

index that fails to disclose the dates is incomplete.

*First*, the Department's principal claim rests on privileges that erode over time.  The

Department relies on the presidential communications privilege and deliberative process

privilege to justify withholding the 11,000 pages covered by item 1 of its index, and invokes

these same privileges, in whole or in part, for most of the other categories listed in the Morrison

Declaration. <u>See</u> Exhibit 1, Tab A, Items 2-159.  The age of the records is relevant to these

claims because the privileges designed to promote candor in executive deliberations are not

8

"fixed and permanent" but erode "with the passage of time." Nixon v. Freeman, 670 F.2d 346, 356 (D.C. Cir. 1982); accord Public Citizen v. Burke, 843 F.2d 1473, 1479 (D.C. Cir.1988). As the Supreme Court observed in discussing the presidential communications privilege, the expectation of confidentiality of executive communications "has always been limited and subject to erosion over time after an administration leaves office." Nixon v. Administrator of General Services, 433 U.S. 425, 450-51 (1977).

Moreover, the Department's treatment of all records from 1973-1989 as a single category presumes, without basis, that the pardon process, disclosure practices, and other considerations that may be relevant to the validity of the privilege are identical for all pardons considered during the four Presidential administrations that covered this period. Even a cursory review shows that this premise is untenable. As the Department acknowledges, the Ford and Carter Libraries have disclosed at least some letters of advice concerning pardons. See Morrison Decl. ¶ 19. Records from the Nixon Administration are the oldest at issue, and records relating to advice to President Nixon have been subject to a unique legal regime for nearly thirty years because of the passage of the Presidential Records and Recordings Materials Act shortly after President Nixon resigned. See 44 U.S.C. § 2111 note; Nixon v. Administrator, 433 U.S. at 433-46. The most recent records at issue are from the Reagan Administration, the first administration whose records were subject to the Presidential Records Act, which contemplates that records concerning advice to the President will be disclosed five to twelve years after the end of the administration. 44 U.S.C. 2201-07.

Plaintiff believes that the basis for any privilege has completely eroded for these pre-1989 records, but by omitting any information on dates, the Department's Vaughn index frustrates any

meaningful consideration of the age of the records or the differences between the Presidential

administrations in which they were created.  Where, as in this case, review of the agency claims

must include consideration of whether the "sensitivity of the information withheld" has

diminished with age, categorical descriptions that frustrate consideration of this factor are

inappropriate. King, 830 F.2d at 226 (court should give particular attention to age of the records

where the agency asserted that information was properly classified because the sensitivity of

information changes with time).

     ***Second***, by withholding information on dates, the Vaughn index handicaps Plaintiff's

ability to show that the Department's privilege claims are waived or undermined by prior

disclosure of identical or similar information.  For example, the Department has asserted that

various executive privileges justify withholding documents related to clemency petitions by

James Hoffa.  See Exhibit 1, Tab 1, items 74-91.  The government previously released, without

redactions, records concerning the Department's deliberations on the Hoffa case in the mid-

1970s.  For example, Plaintiff's Exhibit 2 accompanying this motion is an August 2, 1973,

eleven-page memorandum from the Office of Legal Counsel to the Pardon Attorney.  This

document fits the description of the document that the Department identifies in item 78 of its

Vaughn index as being withheld in its entirety under the presidential communications privilege.

See Defendants' Exhibit 1, Tab 1, page 12, item 78.  If Plaintiff's Exhibit 2 is the memorandum

identified in item 78, any privilege has been waived and disclosing the date of item 78 in the

Vaughn index would serve to confirm that this document has already been released.[3]  By

---

[3] Similarly, Plaintiffs' Exhibit 1, a September 23, 1976 Memorandum from the Special
Assistant to the Attorney General to the Pardon Attorney, fits the description for item 74 in the
Department's Vaughn index.  Plaintiff's Exhibit 3, a September 24, 1976, memorandum in

withholding date information, the Department makes it far more difficult for Plaintiff to identify and confirm such prior disclosures.

*Third*, the dates of the records are material to evaluating the reasonableness of the Department's claims that it has properly withheld information identifying individuals on the basis of personal privacy. As discussed further below, the personal privacy claims that the Department has asserted here are not valid justifications for withholding information under the FOIA if individuals are deceased. See below at 13. Whether it is reasonable for the Department to presume that a given individual is still alive turns, in part, on the age of the records and on the information available to the Department about the individual's age. However, for the approximately 11,000 pages covered by item 1, the Department has disclosed neither. Because many of the individuals who applied for a pardon fourteen to thirty years ago are likely to be deceased, their names are discloseable even under the Department's interpretation of FOIA's personal privacy exemptions. By failing to disclose the age of the records, the Department's Vaughn index masks details that are material to these personal privacy claims.[4]

---

response from the Pardon Attorney appears to be item 79 in the Department's Vaughn index.

[4] Such details also reveal how the Department has applied its own standards for asserting personal privacy interests. For example, the Department has withheld the names of private citizens who submitted their views on clemency applications, including correspondence concerning a posthumous pardon for Marcus Garvey. Exhibit 1, Tab A, p. 8, item 52. The Department states that it released the identity of the writers if information contained in the letters allowed it to determine that the writer would now be 75 years old "because the writer made reference to his age." Morrison Decl. ¶ 35. Apparently, the Department has interpreted "reference to his age" narrowly, as it redacted the identity of the writer of Plaintiff's Exhibit 14, a 1984 letter in which the writer indicates that he or she was a student at Cornell University in 1940. Although this statement indicates that the writer was approximately sixty when he or she wrote the letter, and would be about eighty if he or she is still alive today, the Department did not apply its 75-year cut-off to this record. The Department has also asserted personal privacy as a basis for withholding the identity of writers whose correspondence has previously been disclosed

**II.   THE DEPARTMENT'S *VAUGHN* INDEX FAILS TO ADDRESS THE AGENCY'S BURDEN OF DEMONSTRATING THAT IT HAS TAKEN STEPS TO DETERMINE WHETHER INDIVIDUALS ARE ALIVE BEFORE WITHHOLDING INFORMATION BASED ON THE PRIVACY INTERESTS OF THESE INDIVIDUALS.**

This Circuit and the Department of Justice have recognized that the personal privacy interests protected by the FOIA are generally not substantial enough to support withholding the identity of deceased individuals.  For example, in a case involving a FOIA request for the records of a 1960s FBI investigation, the Court of Appeals held that the agency could not invoke Exemption 7(C) on behalf of FBI agents who the agency had not determined were still living. See Campbell v. Department of Justice, 164 F.3d 20, 33-34 (D.C. Cir. 1999).[5]  The Department of Justice acknowledges that it does not withhold names based on the privacy interest at issue in this case if the person identified in an agency record is deceased.  See Morrison Decl. ¶¶ 33. 34 (Department disclosed names of persons "known to be deceased").  The fact that an individual is deceased is not always dispositive under the FOIA because there are some contexts in which records may be withheld based on privacy after the subject is deceased.[6]  However, for the type

---

without redactions. Compare Plaintiff's Exhibit 4 (redacted May 10, 1972 correspondence concerning Hoffa pardon) with Exhibit 5 (unredacted version previously released); Plaintiff's Exhibit 6 (redacted March 9, 1974 correspondence concerning Hoffa pardon) with Exhibit 7 (unredacted version previously released).

[5]See also Summers v. Department of Justice, 140 F.3d 1077, 1084-85 (D.C. Cir. 1998) (Silberman, C.J., concurring) ("targets of the FBI's dirt-gathering activities may have an overwhelming privacy interest.  The FBI, however, has made no reasonable effort to determine whether these targets are now dead or alive."); id. at 1085 (Williams, J., concurring); Hall v. Department of Justice, 26 F. Supp. 2d 78, 81-82 (D.D.C. 1999) (presuming 7(C) exemptions are justified only if individuals are still alive) (citing Summers, 140 F.3d at 1084).

[6]The Department's policy and this Circuit's decisions recognize that there are special circumstances, which the Department describes as "survivor privacy," in which privacy interests

of privacy interests that the Department invokes here, death is determinative under the

Department's own interpretation of the FOIA.

Because the agency alone knows whose names have been withheld based on privacy, and

because the agency has the burden of proving its exemption claims, it must prove that it has

taken adequate steps to determine that the individuals whose privacy it is invoking are not

deceased.  See Campbell v. Department of Justice, 164 F.3d at 33-34.  The Court of Appeals has

made clear that conclusory assurances are not sufficient to satisfy this burden -- the agency must

provide evidence by affidavit or declaration.  Schrecker, 254 F.3d at 166-67.  In Schrecker, the

Department argued that an FBI declaration stating that the agency consulted "other readily

available information," and unsworn representations by counsel that these sources included

consulting the "Social Security Death Index" should be sufficient to satisfy the agency's burden.

The Court of Appeals rejected this claim, and held that the agency must describe -- through

affidavits, not just representations of counsel --  precisely what steps it took to ascertain whether

an individual was dead or alive so that the district court can evaluate whether the agency "did all

it should have done." Id. at 167; see also Campbell, 164 F.3d at 33-34.

The Department's declarations here do not provide even the minimal details that the

Court found to be inadequate in Schrecker.  As discussed above, the declaration describing the

FBI's processing of the records mentions searching "newspaper obituaries and death records" for

---

are substantial even if an individual is deceased because the records contain particularly
sensitive, often graphic, personal details about the individual's death.  See Department of Justice,
"FOIA Post," available at http://www.usdoj.gov/oip/foiapost/2003foiapost17.htm; FREEDOM OF
INFORMATION ACT GUIDE & PRIVACY ACT OVERVIEW,  337-38 (May 2002 ed.); see also
Accuracy in Media v. National Park Service, 194 F.3d 120 (D.C. Cir. 1999).  No such records are
at issue here.

information on David Lee Parr.  Keeley Decl. ¶ 7.  However, this declaration contains no other

description of what, if any, information the Department examined before asserting the personal

privacy claims described for all of the other categories of records covered by the declaration. Id.

at 5-15, ¶¶ 9-25.  The FBI's declaration also does not state whether it applied a 75-year cut-off

comparable to the one described in the Morrison Declaration to any or all of the Office of Pardon

Attorney Records that it processed.[7]  The declaration describing the processing by the Office of

the Pardon Attorney states that the Department applied a 75-year cut-off to one category of

records, but does not describe any efforts to determine whether the individuals whose names

were redacted from other categories of records are still alive.  See Morrison Decl. ¶¶  32-37.[8]

## III.     THE BRIEFING SCHEDULE SHOULD BE POSTPONED UNTIL THE DEFICIENCIES IN THE DEPARTMENT'S *VAUGHN* INDEX ARE CURED.

Plaintiff requests that the Department be ordered to cure the deficiencies in its Vaughn

index, and that the date for Plaintiff's Opposition and Cross-Motion be deferred until two weeks

after a proper Vaughn index has been provided.  As discussed above, the mandate that Vaughn

indices provide as much information as possible without compromising an exemption claim is

---

[7] The FBI's redactions are inconsistent with a 75-year cut-off.  For example, the Department withheld the identity of the wife of Lester Binion from a 1976 report.  See Plaintiff's Exhibit 8 at Page 65.  However, the government's records indicate that this individual was 37 years old in 1954 when Mr. Binion began serving his sentence.  See Plaintiff's Exhibit 13 at Page One.

[8] The most reasonable reading of declaration describing the processing by the Office of the Pardon Attorney seems to be that, aside from the correspondence to which the Department applied the 75-year rule, the Department did not make any effort to ascertain whether individuals were deceased and considered the individual's death only if it was affirmatively brought to its attention.  If so, the declaration may not be incomplete, but the Department's personal privacy claims are untenable because the Department has failed to take the steps contemplated by Schrecker, Campbell and other cases.

not intended merely to provide the Court with a detailed record for review, but also to provide

the requester with the ability to present an adversarial challenge to the government's claims.  See

Lykins, 725 F. 2d at 1463.  Because the Vaughn index here lacks critical details, it handicaps

Plaintiff's ability to challenge the Department's assertions on the merits and present his

arguments for summary judgment in his favor with specificity.  See Campaign For Responsible

Transplantation v. FDA, 219 F. Supp.2d 106, 116 (D.D.C. 2002).

The Department could arguably supplement its papers to cure these deficiencies when it

files its reply papers, but that is not an appropriate course for several reasons.  First, as a general

matter, allowing the moving party to withhold part of its case until the reply is unfair to the

opposing side, increases the risk that the court's decision will not be adequately informed by the

adversarial process, and suggests that the moving party is strategically "sandbagging."  See

Herbert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C. Cir. 1992); Corson and

Gruman Co. v. NLRB,  899 F.2d 47, 50 (D.C. Cir. 1990).  Second, in the context of the FOIA,

the requester must rely on a detailed Vaughn index from the agency to make his own case for

judgment.  See Phe, Inc. v. Department of Justice, 983 F.2d 248, 250 (D.C. Cir. 1993); King, 830

F.2d at 218.  Allowing the agency to defer providing the details that are necessary to give the

requester an adequate description until after the deadline for the requester's motion defeats this

function.  Finally, in the FOIA context the Court of Appeals has stressed that agencies should not

be permitted to present their exemption claims in stages because such a practice prolongs

resolution of whether the agency is improperly withholding materials.  See Department of Justice

v. Maydak, 218 F.3d 760, 764 (D.C. Cir. 2000), cert. denied, 533 U.S. 950 (2001).  For the same

reasons, the Department should be required to present all of its claims *and* the evidence needed

to satisfy its burden of proof at the outset so that the Court and the requester are not presented

with shifting and incomplete claims.[9]

## CONCLUSION

For the reasons stated above, the Court should order the Department of Justice to provide

a new <u>Vaughn</u> index that includes a itemized list of the dates of the records withheld and

describes in detail the steps taken by the agency to ascertain whether individuals who are the

basis for the agency's claims based on personal privacy are alive.  The Court should also extend

the date for Plaintiff's Opposition to the Department's Motion for Summary Judgment and

Cross-Motion for Summary Judgment to two-weeks after the Department provides a <u>Vaughn</u>

index that complies with this Court's order.

Respectfully submitted,

_____

Michael E. Tankersley
D.C. Bar No. 411978
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-1000

Counsel for Plaintiff

July 17, 2003

---

[9] The Court of Appeals has also noted that a <u>Vaughn</u> index should be a single, integrated document so that the Court can review the agency's claims without reviewing multiple submissions from the agency.  <u>Founding Church of Scientology</u>, 603 F.2d at 949.  This requirement also indicates that deficiencies in the <u>Vaughn</u> index should be corrected at the outset.